954 So.2d 1245 (2007)
STATE of Florida, DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, Petitioner,
v.
Jose WEJEBE, Respondent.
No. 3D06-2334.
District Court of Appeal of Florida, Third District.
April 25, 2007.
*1246 Judson Chapman, General Counsel and Jason Helfant, Assistant General Counsel, Department of Highway Safety and Motor Vehicles, for petitioner.
Hersch and Talisman and Richard Hersch, Coconut Grove, for respondent.
Before RAMIREZ, SUAREZ, and CORTIÑAS, JJ.
CORTIÑAS, Judge.
The Department of Highway Safety and Motor Vehicles seeks second-tier certiorari review to determine whether the circuit court, sitting in an appellate capacity, properly quashed a Department of Highway Safety and Motor Vehicles' administrative order suspending Jose Wejebe's driver's license under section 322.2615, Florida Statutes (2005).
On October 14, 2005, Jose Wejebe was pulled over around 11:00 p.m. after a police officer observed him speeding and driving recklessly. After stopping Wejebe, the officer suspected that he was intoxicated. Wejebe failed two field sobriety tests and was placed under arrest for driving under the influence, reckless driving, and felony fleeing and eluding. After being placed under arrest, Wejebe agreed to take a breathalyzer test. The test was given on an Intoxilyzer 5000, serial number XX-XXXXXX ("Intoxilyzer XX-XXXXXX"), and the test results indicated that Wejebe had a breath-alcohol level of .107 and .095. Wejebe was subsequently charged with driving under the influence, a misdemeanor.
On November 7, 2005, in an unrelated DUI case, a Monroe County Court judge entered an order finding that Intoxilyzer XX-XXXXXX "was out of substantial compliance with FDLE as of February 2004 when the instrument gave an out of tolerance reading and continues to be out of compliance." Amended Order Granting Motion to Exclude Breath Test Evidence, State v. Reich & Stephenson, Nos. 2004 MM 3036 K and 2005 MM 0149 (Fla. Monroe Cty. Ct. Nov. 7, 2005). The judge, Peary Fowler, further recommended that the machine "should be taken off line immediately and subject to a complete overhaul." Id. Based on this order, Wejebe successfully moved the county court to exclude evidence of his breathalyzer results because he had been tested on the same intoxilyzer, Intoxilyzer XX-XXXXXX. Judge Fowler granted his motion on January 18, 2006. Order Granting Motion to Exclude Breath Test Evidence, State v. Wejebe, No. 05-CT-3306-K (Fla. Monroe Cty. Ct. Jan. 18, 2006).
Apart from the criminal charges pending against Wejebe, the Department of Highway Safety and Motor Vehicles ("DHSMV") administratively suspended *1247 Wejebe's driver's license at the time of his arrest. See § 322.2615, Fla. Stat. (2005). Wejebe sought formal review of this six-month suspension, as provided by section 322.2615, Florida Statutes. At the administrative hearing on his license suspension, Wejebe raised the issue of Intoxilyzer XX-XXXXXX being out of substantial compliance. Specifically, Wejebe advised the administrative hearing officer of Judge Fowler's order in Reich. Wejebe also called two witnesses[1] to testify that the machine was out of substantial compliance on the date of Wejebe's arrest, and that there was no evidence in the inspection and maintenance records that proper remedial actions were taken to ensure the accuracy of the machine's results. As the two witnesses explained, FDLE procedures require an intoxilyzer machine that renders an out of tolerance reading to be taken off-line, inspected, and kept out of service until the reason for the erroneous reading can be determined and corrected. These witnesses further testified that unless this is done, the machine is deemed out of compliance, even if subsequent monthly inspections render proper results.
In conjunction with the testimony of these witnesses, Wejebe introduced FDLE/ATP Form 16 (Florida Department of Law Enforcement Alcohol Testing Program, Agency Inspection Procedures) into evidence. Form 16 provides: "[i]f any analytical check or test indicates that the instrument does not comply with Chapter 11D-8, determine the cause and take corrective action. If unable to correct, remove the instrument from service and notify the Alcohol Testing Program Regional Inspector." FDLE/ATP Form 16, Florida Department of Law Enforcement Alcohol Testing Program, Agency Inspection Procedures, incorporated by reference Fla. Admin. Code Ann. R. 11D-8.017.
Here, the evidence indicated that Intoxilyzer XX-XXXXXX gave an out of tolerance reading during its February 2004 inspection, a faulty reading on a "mouth alcohol" test during the December 2004 inspection, and failed the monthly inspection in January 2005, yet nothing in the maintenance and inspection logs indicated that Intoxilyzer XX-XXXXXX was taken out of service and repaired.
Wejebe's two witnesses also testified in the Reich proceeding before Judge Fowler. They testified that during that proceeding, Laura Barfield, the director of FDLE's Implied Consent Programs, admitted that Intoxilyzer XX-XXXXXX was out of compliance because it was not repaired after it failed the February 2004, December 2004, and January 2005 inspections. Wejebe then introduced a copy of Ms. Barfield's testimony into evidence. After the hearing, Wejebe filed as supplemental authority Judge Fowler's order excluding his breathalyzer test results; however, the record is unclear whether the hearing officer received this filing prior to issuing a final order, as the notice of supplemental authority and the final order are both dated February 2, 2006.
DHSMV introduced no testimony after Wejebe's presentation. DHSMV only entered into evidence the monthly maintenance *1248 reports for August 2005 and September 2005, the months immediately preceding Wejebe's arrest, which indicated that Intoxilyzer XX-XXXXXX passed those inspections. After reviewing all the evidence, the administrative hearing officer concluded that the machine was in compliance and that the testimony of Wejebe's two witnesses was unpersuasive. Accordingly, DHSMV issued a final order sustaining the six-month suspension of Wejebe's driver's license.
Wejebe then petitioned the circuit court for a writ of certiorari. Upon receipt of a petition for writ of certiorari, a circuit court sits in an appellate capacity and is authorized to determine: "(1) whether the agency accorded the parties procedural due process; (2) whether the agency observed the essential requirements of law; and (3) whether the agency's action is supported by competent and substantial evidence." Dep't of Highway Safety & Motor Vehicles v. Garcia, 935 So.2d 542, 543 (Fla. 3d DCA 2006) (citations omitted). Here, the circuit court granted Wejebe's petition and quashed the final administrative order. The circuit court found the administrative order departed from the essential requirements of law because collateral estoppel barred relitigation of the admissibility of the breath test results from Intoxilyzer XX-XXXXXX. The circuit court also found that the agency's action was not supported by competent and substantial evidence because DHSMV failed to put forth sufficient evidence that Intoxilyzer XX-XXXXXX was functioning properly in light of Wejebe's evidence, and that DHSMV departed from the essential requirements of law by relying on the breath test results in suspending Wejebe's driver's license.
DHSMV now petitions this court for a writ of certiorari, contending that the circuit court erred in granting Wejebe's petition. "In reviewing the final order of the circuit court acting in its appellate capacity, the district court is limited to determining whether the circuit court afforded the parties procedural due process and applied the correct law." Id. (quoting Dep't of Highway Safety & Motor Vehicles v. Dehart, 799 So.2d 1079 (Fla. 5th DCA 2001)). DHSMV does not contend that the circuit court violated its procedural due process rights. Thus, the only issue we can review is whether the circuit court applied the correct law.
DHSMV contends that the circuit court misapplied the law by erroneously shifting the burden of proof to DHSMV to prove Intoxilyzer XX-XXXXXX was in compliance, and by concluding that Judge Fowler's order excluding the breath test results was binding on the DHSMV hearing officer under collateral estoppel. On this first issue, the circuit court concluded as follows:
The issue of collateral estoppel aside, at the very least, the Appellant [Wejebe] by submitting copies of the prior trial court proceedings (his own as well as the orders entered in Reich and Stephenson[)] suppressing the breath test results from this particular machine was at least sufficient to shift the burden to the Department to show that the machine was accurate and operating in compliance with applicable FDLE regulations.
The evidence presented in the record to the hearing officer by the Department in the form of documents was not sufficient to show that the machine was or had been operated in compliance with FDLE standards in the absence of evidence that the machine had been repaired or the reason for the recorded failures explained.
Accordingly, the court must conclude that the hearing officer departed from *1249 the essential requirements of the law in utilizing the results of Appellant's October 14, 2005 tests to sustain the suspension of driving privileges. There is no proof that the machine was ever repaired or adjusted nor has there ever been given a reason for the three failed tests. A driver's privilege to operate a motor vehicle in Florida should not turn on such questionable evidence and Florida drivers as well as that [sic] of our visitors should be not subject to losing their licenses to drive or being convicted of driving while under the influence from readings from machines proven to be inaccurate and proven to not be properly maintained in accordance with the governing performing standards for such instruments designed to assure the accuracy of such instruments.
We find that the circuit court applied the correct law. In the initial instance, DHSMV is not required to prove that the intoxilyzer machine was in compliance. Dep't of Highway Safety & Motor Vehicles v. Mowry, 794 So.2d 657, 659 (Fla. 5th DCA 2001). Instead, the driver has the burden of establishing that the intoxilyzer machine was not in compliance. Id. However, once a driver submits proof that an intoxilyzer machine was not in substantial compliance with the appropriate regulations, DHSMV must prove that there was substantial compliance. See Dep't of Highway Safety & Motor Vehicles v. Farley, 633 So.2d 69, 71 (Fla. 5th DCA 1994). Because this is the law that the circuit court applied, there is no error.
Further, the evidence before the administrative hearing officer was that FDLE itself, through its director of Implied Consent Programs, Laura Barfield, testified in a previous proceeding that Intoxilyzer XX-XXXXXX was out of substantial compliance because it failed monthly inspections and was never repaired or taken out of service. Additionally, Wejebe's two experts testified that, based on their review of the maintenance and inspection logs for Intoxilyzer XX-XXXXXX, Intoxilyzer XX-XXXXXX failed inspections, but was never repaired as required by FDLE regulations. In response, FDLE introduced no evidence that Intoxilyzer XX-XXXXXX did not fail inspections, that Intoxilyzer XX-XXXXXX was repaired after the failed inspections, or that FDLE regulations do not require repair after failed inspections. Thus, the circuit court had no choice but to conclude that the breathalyzer test results were not competent, substantial evidence to support the administrative hearing officer's finding that Wejebe had a breath-alcohol level of .08 or higher.
Because the circuit court applied the correct law to its adjudication of Wejebe's petition, we find no grounds upon which to grant DHSMV's petition. Additionally, because the circuit court's order can be upheld on this ground alone, we need not address the circuit court's alternative holding that collateral estoppel barred relitigation of this issue.
Petition denied.
NOTES
[1] Wejebe called Rick Swope and Kirk Salvatori as expert witnesses. Mr. Swope testified that he is an engineer who has experience testing the Intoxilyzer 5000 and that he was a certified breathalyzer technician and a repair and maintenance technician for nine years. In fact, Mr. Swope has testified about the Intoxilyzer 5000 approximately 700 times. Mr. Salvatori testified that he was the Monroe County Sheriff's Office Agency Inspector for the intoxilyzer machines as well as a maintenance officer for the intoxilyzer machines. He testified that both his agency inspector certification and his maintenance officer certification are currently valid.